UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDELKADER MORCELI,<br><br>    Plaintiff,<br><br>    v.<br><br>W. MEYERS, et al.,<br><br>    Defendants. | Case No.: 1:11-cv-00685-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 44) |

**I.    Background**

Plaintiff Abdelkader Morceli ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's complaint against Defendant Myers (erroneously sued as Meyers) for violation of the Free Exercise Clause of the First Amendment and Equal Protection in violation of the Fourteenth Amendment. (ECF No. 25.)

On November 4, 2013, Defendant Myers filed a motion for summary judgment.  (ECF No. 44.) Following extensions of time, Plaintiff opposed the motion on September 8, 2014.  (ECF No. 61.) Defendant Myers replied on September 19, 2014.  (ECF Nos. 62-64.)  The motion is deemed submitted.  Local Rule 230(l).

///

///

1

## II. Defendant's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at this order, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

1  objections, and other papers filed by the parties.  Omission of reference to an argument, document,
2  paper, or objection is not to be construed to the effect that this Court did not consider the argument,
3  document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it
4  deemed admissible, material, and appropriate.

5         **B.  Summary of Relevant Allegations in Plaintiff's First Amended Complaint**

6         On July 26, 2010, Plaintiff was informed by the second watch dining staff that, per Defendant
7  Myers and others, he could not wear a kufi, even though a memo had previously been issued by
8  Warden James Yates approving kufis to be worn within the institution.  Plaintiff alleges that
9  Defendant Myers ordered correctional officers to refuse to allow Muslim inmates to wear kufis in the
10 dining hall and to refuse to allow inmates to purchase and wear black kufis anywhere within Pleasant
11 Valley State Prison ("PVSP"), while Jewish inmates are allowed to wear yarmulkes.  (ECF No. 1.)

12         **C.  Defendant's Statement of Undisputed Material Facts ("DUF")**

13         1.  At the time relevant to this action, Defendant Myers, who is now retired, was employed
14 by the California Department of Corrections and Rehabilitation (CDCR) as a correctional lieutenant
15 and was assigned as the acting community resources manager (CRM) at PVSP.  (Myers Dec. ¶ 1.)

16         2.  As the acting CRM, Myers was an ex officio member of PVSP's Religious Review
17 Committee (RRC), as was the warden and others.  Myers' role on the RRC was to gather questions
18 and concerns from inmates and staff concerning religious issues with inmates at PVSP and to present
19 the agenda at RRC meetings. (Myers Dec. ¶ 2.)

20         3.  The RRC did not make prison policies, but rather made recommendations that the
21 warden would determine whether and how to act upon. The RRC did not require Myers' approval to
22 make a policy recommendation to the warden, and the warden did not require her approval to
23 determine whether and how to act upon an RRC recommendation.  (Myers Decl. ¶ 3.)

24         Plaintiff attempts to dispute the fact that the RRC did not make prison policies, arguing that
25 Defendant Myers conceded that the RRC was "a group comprised of various CDCR personnel and
26 thus collectively discussed various issues and would then make prison policies to submit to the PVSP
27 warden for approval."  (ECF No. 61, p. 59.)  In support of this argument, Plaintiff cites to Defendant
28 Myers' interrogatory responses.  However, Defendant Myers' interrogatory responses do not support

1 Plaintiff's argument. Defendant Myers expressly responded that the "RRC did not make policies, procedures, and practices" and that they only made recommendations. (ECF No. 61, Ex. A at p. 5.) The warden determined whether and how to act on any recommendation. (Id.) As discussed more fully below, Plaintiff's own evidence establishes that the warden was responsible for issuing policy memoranda. (See ECF No. 61, Pl's Exs. B, E.)

4. On or about August 3, 2010, the warden signed a memorandum formalizing a modification of the policy concerning religious headwear following the RRC meeting on July 19, 2010. The memorandum provided in pertinent part: "Allowable colors for religious headwear will be white and/or grey only. Inmates are allowed to wear their religious artifacts going to, during and coming from religious services/events and in their cell/bunk areas only." (Myers Dec. ¶ 4 & Ex. A, Memorandum dated August 3, 2010.)

7. Under other regulations addressing headwear and clothing in general, no inmates were permitted to wear headwear, religious or not, in the dining hall without specific permission and no inmates were permitted to wear black clothing of any kind. (Myers Dec. ¶ 6.)

9. In addition to being permitted to wear their kufis in their cell or bunk area and going to, during, and coming from religious services, Muslim inmates were permitted to keep a Qur'an, to attend religious services, and to celebrate Muslim holy days. They were provided with a religious diet, allowed to have religious oils, and permitted to wear facial hair in the manner that Plaintiff feels is necessary to express his faith. (Myers Dec. ¶ 11; Morceli Depo. 30:9–32:8.)

10. The only religious practice or expression that Plaintiff feels that he was not permitted was the restriction on where he could wear his kufi. (Morceli Depo. 31:18–32:5.)

11. Myers did not have any supervisory role over the staff at Plaintiff's housing facility or dining hall, and she did not direct any staff to prohibit kufis from being worn in the dining hall on or before July 26, 2010. (Myers Dec. ¶ 8.)

Although Plaintiff contends that Defendant Myers maintained a supervisory role over all PVSP staff, he provides no supporting evidence to raise a genuine dispute of material fact. (ECF No. 61, Pl's Brief, p. 7.) Conclusory allegations are not sufficient to defeat summary judgment. See Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

4

1  Plaintiff's "belief" that the PVSP warden delegated to Myers the exclusive authority over all
2  PVSP religious matters does not raise a genuine dispute of material fact. Further, Plaintiff's evidence
3  belies his belief that PVSP's warden delegated any authority to Myers regarding PVSP religious
4  matters. At best, the evidence cited by Plaintiff confirms that the PVSP warden, not Myers, issued
5  religious policy. According to the evidence supplied by Plaintiff, PVSP's warden issued a policy
6  memorandum on January 21, 2011, addressed to all staff and inmates, regarding the wearing of
7  religious artifacts. In that memorandum, the warden merely indicated that if staff or inmates had
8  questions or concerns, then those questions or concerns should be conveyed to Defendant Myers. In
9  relevant part, the warden wrote, "If you have any questions or concerns, please contact W. K. Myers,
10 Community Resources Manager (A), at extension 7801; or by way of Prison mail." (ECF No. 61, Pl's
11 Ex. E.) The warden's statement was not an express or implied delegation of authority to Defendant
12 Myers regarding all religious policy matters at PVSP.

13  12. Myers was not present in the PVSP dining room on July 26, 2010. (Myers Dec. ¶ 9.)

### D. Plaintiff's Statement of Undisputed Material Facts ("PUH")

15  1. Plaintiff is an Algerian native who was born Muslim and has practiced Islam his entire
16 life. As such, Plaintiff believes the Holy Qur'an (Arabic text) to be the complete and unaltered Word
17 of Allah (God), and thus is an adherent thereof as well as the Sunnah (i.e., legal ways, orders acts of
18 worship, statements, etc.) of Prophet Muhammad (PBUH). (ECF No. 61, Morceli Dec. ¶ 4.)

19  2. Every Muslim has been ordered by Allah to follow the Sunnah of Prophet Muhammad
20 (PBUH) as he is the Messenger of Allah and an exemplary example for mankind to follow (Holy
21 Qur'an 33:21) due to his words and actions being inspired by Allah (46:9). Specifically, the English
22 translation of the Holy Qur'an says: "O you who believe! Obey Allah, and obey the Messenger and
23 render not vain your deeds." (47:33); "This is because they defied and disobeyed Allah and His
24 Messenger. And whoever defies and disobeys Allah and His Messenger, then verily, Allah is Severe
25 in Punishment." (8:13)

26  3. The Sunnah of Prophet Muhammad (PBUH) are manifested in the Ahadith (collection
27 of Sunnah) of which there are six Sahih (highly authentic) compilers of Ahadith that Muslims rely

upon to ascertain the Prophet's (PBUH) Sunnah.  Within the Ahadith, the Muslim man is commanded to always cover his head with a kufi wrapped in a turban.  (ECF No. 61, Ex. D at p. 3.)

   4. As a Muslim, it is Plaintiff's sincerely-held religious belief that he must learn and adhere to the decrees of Allah as manifested in the Holy Qur'an, as well as adhere to the Sunnah of Prophet Muhammad (PBUH) as outlined in books like Sahih Ahadith.  Plaintiff's adherence to the Sunnah includes, but is not limited to, praying five (5) times daily; praying the way Prophet Muhammad (PBUH) prayed; wearing a kufi/turban; wearing a full beard; using miswak stick; wearing prayer oil; performing ablution; etc.

   5. Plaintiff is currently incarcerated in the CDCR pursuant to criminal convictions unrelated to the instant case pending before the Court.  From 2008 through 2012 Plaintiff was housed at PVSP and was acknowledged by PVSP staff as an active member of the Islamic Faith.

   6. Defendant Myers was acting Community Resources Manager (CRM) and a member of PVSP's Religious Review Committee (RRC) from October 2008 to March 2012.  Myers was promoted from correctional officer to correctional sergeant in October 1995 and from correctional sergeant to correctional lieutenant in June 2001 and remained so until her March 2012 retirement.  As a correctional lieutenant, Myers had one or more correctional sergeant(s) and an unspecified number of correctional officers under her authority as subordinates that would carry out and enforce any/all directives issued by her.  (ECF No. 61, Ex. G at § 33010.18.1.)

   7. On July 26, 2010, Plaintiff entered a PVSP dining hall wearing his kufi during the feeding process whereupon he was confronted by an unidentified correctional officer and given a direct order to remove his kufi as it was a new policy.[1]  (ECF No. 61, Morceli Dec. ¶ 8.)

  **E.** **Discussion**

Defendant argues that summary judgment should be granted because:  (1) Defendant Myers did not order staff to prohibit Plaintiff's headwear, and the warden of PVSP, not Defendant Myers, created the policy regarding headwear; (2) the policies prohibiting headwear in the dining hall and prohibiting black clothing served legitimate penological purposes without substantially burdening

---

[1] Defendant objects to Plaintiff's statement that "an unidentified correctional officer . . . advised me the new policy was 'per lieutenant Meyers'" as hearsay.  Defendant's objection is SUSTAINED.  Fed. R. Evid. 801-802.

Plaintiff's exercise of religion; (3) the policies applied equally to all headwear, including that of other religions, not just kufis; and (4) Defendant Myers is entitled to qualified immunity, because there was no clearly established right of a Muslim inmate to wear a kufi at all times and in all places without restriction or to wear a black kufi in particular.

As noted above, this action proceeds on Plaintiff's complaint against Defendant Myers for violation of the Free Exercise Clause of the First Amendment and Equal Protection in violation of the Fourteenth Amendment.  However, Plaintiff has requested that his Equal Protection Claim be withdrawn.  (ECF No. 61, p. 4) ("Due to a lack of evidence, Morceli hereby seeks the Court's leave to withdraw his Equal Protection claim.").  Accordingly, the Court limits its consideration to Plaintiff's Free Exercise claim against Defendant Myers.

**First Amendment – Free Exercise Clause**

Plaintiff alleges that his First Amendment rights were violated by Defendant Myers when she denied him the right to wear his kufi in the dining hall and denied him the right to purchase and wear black kufis anywhere within PVSP.  (ECF No. 1.)

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

Here, Plaintiff fails to point to any evidence indicating that Defendant Myers ever prevented Plaintiff from wearing his kufi in the dining hall.  According to the undisputed evidence, Defendant Myers was not present in the dining hall on July 26, 2010, when Plaintiff contends that a correctional officer ordered him to remove his kufi.  (DUF 11, 12; ECF No. 61, Pl's Brief, p. 4.)  The undisputed evidence also demonstrates that Defendant Myers did not have any supervisory role over the staff in Plaintiff's housing facility or dining hall and did not direct any staff to prohibit kufis from being worn in the dining hall on or before July 26, 2010.  (DUF 11, 12.)

Plaintiff also fails to point to any evidence indicating that Defendant Myers was responsible for policies regarding religious headwear. Even if prison policy during the relevant time period prevented inmates from wearing headgear in the dining hall or wearing black articles of clothing, this alone cannot form the basis of an actionable claim against Defendant Myers because she was not responsible for the policy or policies at issue. Indeed, the undisputed evidence, including that supplied by Plaintiff, establishes that the PVSP warden, not Defendant Myers, was responsible for policies regarding religious headwear. (DUF 2, 3, 4; ECF No. 61, Pl's Exs. B, E.) There is no evidence that Defendant Myers had any ability to stop the implementation of the warden's policies, including those policies prohibiting the wearing of a kufi in the dining hall or the wearing of black clothing. (DUF 3.) Thus, it cannot be said that she denied Plaintiff his First Amendment rights or caused Plaintiff any injury resulting from prison-wide implementation of the policy. See Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999) (discussing causation as necessary element of section 1983 claim).

For these reasons, the Court finds that Plaintiff has not established a genuine issue of material fact as to whether his right to the free exercise of his religion was violated by Defendant Myers. The Court will therefore recommend that Defendant Myers' motion for summary judgment be granted. Given this determination, it is unnecessary for the Court to undertake an analysis of the underlying policies and their constitutionality. It also is unnecessary for the Court to consider whether Defendant Myers is entitled to qualified immunity.

**III. Conclusion and Order**

For the reasons discussed above, IT IS HEREBY RECOMMENDED that

1. Defendant Myer's motion for summary judgment, filed on November 4, 2013, be granted; and
2. Judgment be entered in favor of Defendant Myers.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 1, 2014**           /s/ Barbara A. McAuliffe
                                    UNITED STATES MAGISTRATE JUDGE